Please be seated. Thank you. Mr. Johnson, you may proceed. May it please the Court. Your Honors, this case ran off the rails initially. When the trial court assumed for itself total, complete authority, without regard to statute of case law, when it began this case, when it relied on a 1909 appellate court decision that had no binding authority and no precedential authority, and what the Court said about it can be located at record page 281, 282, and the Court said it on May 25, 2016. All of the trial court's legally erroneous rulings, Your Honors, in this case naturally flowed from that decision because the Court could do whatever it wanted. As long as it was satisfactory to it, again, that's what the Court said at 281, 282 of this record. In regard to these errors, these errors are flagrant. They permeate the record. They go from the beginning of the case to the end of the case. The Court, first of all, began as far as on the issue of standing when it was characterized the legal standing of Corey and Sarah as compared to Robin. At that point in time, Robin was already the appointed plenary guardian of this minor. Nevertheless, the Court said, neither of these parties have any relationship to this minor child at record 204. The Court then further ignored this Court's decision in in re TPS which held that non-parent guardians had standing while other third parties do not. Holding that Sarah and Corey were the non-parent non-guardians, the Court found they had standing here. Well, let's go back to something you said before. Neither of the parties have any relationship. I did not perceive that to be legal relationship. I perceived that to be familial relationship. None of the parties were family to this child, correct? That's correct. But nevertheless, Your Honor, with all due respect, from that point forward, my client, Robin, was placed on a similar legal status plenary with the petitioners of Corey and Sarah. And my client at that point was the properly appointed, legally appointed plenary guardian. But your client, a year earlier, had given or had considered, not given, but had allowed these people to care for this child almost exclusively other than visitations with your client, and they had discussed adoption of this child by these people. I understand, Your Honor. How can she do that and say that they are not interested parties? Your Honor, my client has no authority to confer legal standing on the petitioners, first of all. This is a legal relationship. It's not some relationship that just comes about. This isn't a situation under the Marriage and Dissolution of Marriage Act where someone can have standing just by mere possession. Respectfully, the case of KES, which has been cited in our brief, indicated that a guardian ad litem can take, in KES particularly, the guardian, not guardian ad litem, the plenary guardian, allowed the child to go and be educated in the state of Texas for a year and a half. The appellate court said that certainly wasn't abandonment. I'm not alleging abandonment by your client. I'm just saying that while she is not given authority to say, okay, now you're the guardian, I get that, she is putting them in a position that puts them in a relationship with this child that also needs to be considered by that court and this court. Your Honor, I understand what the court is saying, but I think that the legal relationships that are created by court appointments have to be the ones that are upheld here. What about those wherein someone, and I believe the probate court, and if not probate court, the court of chancery, was the original court in England that had jurisdiction over minors and in this instance the probate court has jurisdiction over a minor. And with chancery, and I believe with probate, equitable principles apply. And so even though your client may not have the ability to amend a statute, as you've argued, at least that's I think what you've argued, why isn't your client stopped from arguing this point since your client put these people in a position where they altered their positions for at least a year, altered the relationship between the child and these people, affected the child's milieu, the child's environment, the child's nurturing? Why isn't estoppel applicable here? Is it because it wasn't raised below? Your Honor, it wasn't estoppel, and the reason it wasn't estoppel is because, in fact, there was testimony from one of the petitioners, I believe it was Sarah, that they were just acting as babysitters for this child. This was a babysitting relationship. If that's the case, then they should have been, your client or somebody should have been charged with neglect. You can't give somebody a babysitter responsibility for a year or a year and a half. That makes no sense. It makes no sense. All I can do, your Honor, at that point is rely on the KES decision that says that it certainly was within the authority of the properly appointed guardian. Well, why wouldn't it be to send a child to school out of state? I mean, I don't see any similarity between these two cases, none. If you could tie it up a little better, I'm happy to listen. I'm sure the Court is aware of the KES decision. Yes. And respectfully, I take the position that KES was far more beyond the ken of these facts than what happened here. And still, notwithstanding that, the appellate court determined in KES that it was properly within the authority of the guardian to do so. Because the authority of the guardian was challenged also in KES for doing virtually the very same thing. The appellate court said, this is within the authority of the plaintiff's guardian. Well, tell me why they were not interested persons within the meaning of the statute. Yes. They were not interested persons, first of all, because they had no financial interest under the section. They had no fiduciary interest. Let's step on that. Tell me why they were not fiduciaries if they had care of this child. Why did they not have a fiduciary interest? Is there any definition in this statute of what a fiduciary is? Your Honor, mere possession of the child doesn't create a fiduciary. Well, possession, I mean, they acted in her interest by caring for her, feeding her, sending her to school. And my client paid for the schooling, paid for the medical care, took the child also to medical appointments. So let's step again on this, please, because this point is important to me. What's the definition of a fiduciary? In this case, under the Probate Act and particularly also under In Re TPS, TPS discusses it. It says the circumstances surrounding a petition to terminate guardianship are inherently different from those surrounding a petition to establish guardianship. Here, a court has already found that it was appropriate to grant Kathy, which would have been my client, the authority to stand as the child's guardian, act as the child's guardian. This gives her a cognizable interest in their welfare. That is an act by operation of law that places the fiduciary relationship in my client, the appointment of my client as the plenary guardian. And, again, neither Sarah nor Corey had a financial interest in the child, and they did not have. You said they were not fiduciaries because they – I'm thinking of the next element under the Probate Act, Your Honor. All right. So do you have the section of the statute in front of you? Pardon me? Do you have it in front of you or not? Because I can read it to you. Yes, I do, Your Honor. I can – I'll find it right here. Because that's the key here. I apologize. That's all right. There are a lot of papers we all have. They had no property right. Okay. They had no financial interest, and they did not have a fiduciary status. And fiduciary status, you say, is cognizable interest in the welfare of the child? Cognizable gives her. This appointment under TPS at paragraph 17, this appointment gives the guardian, the appointed guardian, a cognizable interest in their welfare. Moreover, obviously the court could not appoint Kathy as a guardian in the first place, my client essentially, unless it found that the presumption of the superior rights doctrine was overcome because there was a parent involved. So it was the parent involved here said, sure, you can become the plenary guardian. So the superior rights doctrine was taken care of. My client, Robin, gained her cognizable interest in the child's welfare by virtue of the initial appointment of her as the plenary guardian prior to Sarah, long prior to Sarah, long prior to Corey. And that's why the court in TPS, in paragraph 18, says, although a nonparent who has been legally appointed as a guardian has standing, other third parties do not. So you're saying Sarah and Corey are other third parties? Yes, absolutely. And the court, the trial court has said that. You don't believe that this case, excuse me for interrupting, is distinguishable given the relationships here, here meaning in TP, TPS? Your Honor, we had, we have a case in Ray Scarlett's ED that talks all about making a, putting these relationships together in order to obtain standing. In fact, the petitioner in this case, in their original petition, stated, well, because of our de facto parenting with this child, we have standing. But the only Supreme Court in Scarlett's ED says, oh, no, you don't. We don't recognize that here in Illinois. We don't recognize the theory. Those are outlawed theories that the court never even mentioned Scarlett's ED in this entire case, even though it was consistently raised to the court. But it never, ever said, oh, yeah, well, sure. Illinois Supreme Court said that you can't just ingratiate yourself, bring this child into your family, and then all of a sudden you can claim that you have standing to make a claim for this child. Does it matter that we're dealing with a different statute in Scarlett than we are here? No, Your Honor. I think it's more egregious. And the reason I think it was more egregious is because the person seeking standing in the Scarlett's ED case was a stepfather. Potential adaptive parent. But the court ultimately, who lived with this child for eight years, but ultimately dealt over Supreme Court. And this Court said, you don't have standing. So you think that Scarlett's ED, which related to an antagonistic, adoptive, putative adoptive father, who paid for the European adoption proceedings, who then wished to continue his paternal, putative paternal relationship, as against the maternal, pardon me, the adoptive maternal mother, parent, is the same situation factually as this situation where we're talking about a non-familial guardian who has obtained an operation of law and possibly a consent from the only parent that the court is aware of is the mother. Is the mother, has she been served in these proceedings? Yes. Has she been given notice? Yes. Did she appear? She never appeared. Okay. Who gave, who issued service, you or your opposing counsel? Pardon me, Your Honor? Who issued the notice to the parent? This was done long before, excuse me, may I ask this? Yes. This was done long before I was involved in the case, and it was done before Judge McAdams, I believe about 2015. So this was long before the petitions were even filed here, Your Honor. So she was given notice of the proceedings appointing your client, but was she given notice of the proceedings insofar as what is before us on appeal? Your Honor, I can tell you this. I know this. I can't point it out immediately in the record, but I can find it for the court. About midstream in this case, the biological mother said, I want to file something and I want to come in. The trial court said, okay, you have to come in, but you have to come in by a certain period of time. And apparently notice went out to the person after they filed, hey, I want to come into the case, and they just never showed up in accordance with the trial court's order. Do you recall approximately when in the record that might be reflected? I'll respond respectfully, Your Honor, to that in my reply. I will find out in just a few moments. We can review the record. If it's in there, we'll find it. Pardon me, Your Honor? I said if it's in the record, we'll find it. You don't have to go looking for it. Thank you very much, Your Honor. I don't want you to bill your client any more money than you have to. I apologize. It is in the record. Thank you, Your Honor. Okay. Mr. Moriarty, you may proceed. Thank you, Your Honor. May it please the court, counsel. Judge, I believe that I submit to the court that the trial court's order of December 21st of 2018 is sound in fact and law and urge this court to affirm. I'd like to jump right into the standing issue in as much as that elicited most of the exchange with the court. The primary thrust that I want to make to the court is that both counsel's citation to Scarlett Z.D. and TSP are completely inapposite. Why is that? There is inordinate discussion of the fundamental constitutional rights of biological parents versus those who claim a status of not relation. Just by way of illustration, the portion that was lifted in TSP. It's TPS. TPS. I beg your court's pardon. It says. STP is a motor lubricant. The sentence immediately preceding the one that Mr. Johnson cited says, we believe the rules that we have outlined provide adequate protection for legally appointed guardian as standing. Third parties do not. But that's in the context of that case. Which was what? In that case, the previously appointed guardians were a couple. Their relationship deteriorated and the biological parent applied under Article 11, specifically 11-1401, to terminate the guardianship. Essentially dissolve the ward. That's not what was going on here. There's going to be an estate for this minor irrespective. The question is who is to be the guardian. And, again, there was zero discussion in either of those cases with regards to either Section 23-2 of the Probate Act, let alone Section 1-211, which is a definition of interested person. Well, how is this different? We have a legal guardian. How are her rights under the facts of this case different than the parental rights, let's say, in TPS? She doesn't enjoy the benefits of the presumption of the Constitution that parents have the right under Troxel to care and take care of their children. So here, how far did her rights extend then? When she's the legal guardian, how far did they extend? She serves at the pleasure of the court. So if the court didn't like how she was serving as the guardian then, for whatever reason, the court could remove her? Well, not for any reason. The court has to have good cause as articulated. So failing to follow two court orders is sufficient as opposed to, let's say, holding her in contempt of court? Well, but it's falsifying the guardian's investigation as to what is in the best interest. And again, if you go back to the record, the February of 2016 court order, by agreement, established best interest as the standard by which the GAL was supposed to conduct her investigation as to the petition framed by my clients, which was filed on December 31st of 2015. So that order was by agreement. It's in the record. It kind of underpins the trial court's finding of waiver with regards to the standing issue, even though the trial court cited, which appears to be the only case on point specifically with regards to section 1-211, which is Friends of Murray Center. Now, they reduced the standard there to concern citizens. And again, you don't have to possess a fiduciary status. You have to claim one. And I apologize. I want to be very precise. It says, interested person in relation to any particular action of power proceeding means one who has or represents. You don't have to have a fiduciary status. Kagan. So you're saying Sarah and Corey represent a fiduciary status because they had care of this child for a year? Correct. And again, if you go back to the Friends of Murray Center, they categorized the whole of the statute as being somewhat ambiguous and that it was broad. Just as the trial court did in this case. Well, wouldn't you say that the facts of that case really should be or the holding of that case should be confined to the facts there? The facts are really totally different than here. I mean, we had a number of people at an institution who were going to be moved and a group of citizens came in and said, you know, the move is not in their best interest. I'm not sure the facts there are really parallel and would serve as. What I pulled from the decisive utterance of that case is that they found standing where they equated the interested person to, quote, concerned citizens. And my people rose far and away above that kind of standard. For, indeed, the Article 11 of the Probate Act standard, ability to make and carry out the day-to-day decisions affecting the minor award, were undertaken by my client up until six days prior to the filing of the subject petition. So I think you have to scrutinize the record and make certain that there isn't a waiver because it belies the notion of a consistent assertion that my clients didn't have standing on the one hand when you're agreeing, A, to the appointment of the same guardian or item who conducted the best interest investigation when my clients were not even involved in this case. Secondarily, framing that under the Section 602 of the IMDMA standard or analyses that the trial court undertook in the second half of its opinion after it determined that my clients possessed standing. I wanted to comment as well on the Scarlett Z.D. case because that, again, the interwovenness with regards to the fundamental rights doctrine of biological parents, again, pitted under Troxel, under the 14th Amendment of the Constitution, in emphasis here. But she was an adaptive parent. Right, but legally it takes on the same right as a biological mother. You're correct that it was adaptive. But paragraph 35, the standing requirement of Section 601b2 of the Marriage Act safeguards the superior rights of parents to the care and custody of their children. And in a strange sight, it goes on to cite Troxel. So above and beyond the fact that neither of those cases dealt with either Section 23-2 of the Probate Act or the definition of interested person under Section 1-211 of the Probate Act, you're dealing with people who had more, who had elevated rights under constitutional authority vis-à-vis either a biological or an adaptive parent. Neither party to this case could enjoy that status before the court. So where do your clients fall within the definition of interested person and the opposing counsel? They claim the fiduciary status vis-à-vis the ward. And fiduciary meaning what? Just as it's defined in Article 11 of the Probate Act, to make and carry out the day-in-day decisions that affect the ward. And it's Article 11, you said? Yes, of the Probate Act. Right. Thank you. Did you ever raise a staple? I'm sorry, Justice, the staple that she was asking. Well, you said the court found waver. My question is waver and or a staple. Was a staple ever argued? I argued waver responsive to their very lately filed 2615 motion to dismiss the application to remove and to succeed as the successive guardian right on the eve of the court's sua sponte investigation and hearing. And I guess you could frame it in a staple argument because they actively participated in the appointment of the guardian ad litem, participated in a limited extent, but then disregarded the authority of the guardian ad litem when they would not adhere to the investigative demands of the guardian ad litem. What's your recollection of the parent wanting to either intervene or become a party? Counsel for the appellant was correct. After the court designated my clients the temporary guardian without prejudice on May the 27th of 2016, approximately 30 to 60 days thereafter, the biological mother came in on an article 11, section 11-14.1 petition to terminate the guardianship based upon her status as the biological mother. That was briefed. It was set for hearing. And she never showed up again. But she did appear. She physically appeared in court in Kendall County. Was she pro se or did she have... Yes, she was pro se. And on that note, the reason that she was made aware of these ancillary proceedings as reflected in the record is that contrary to the fragile psyche of the ward, Ms. Boughton was trying to end-run the trial court by trying to get some alliance with the biological mother, the biological aunt, in order to have her surrender. That's in the GAL reports. And that had a deleterious effect on the psyche of the ward. That was approximately July of 2016. If there are no additional questions, I will yield the balance of my time. Well, I believe Justice Zinoff didn't ask you. She asked Mr. Johnson or commented to Mr. Johnson about is it appropriate for a judge to terminate the guardianship if it's based solely on refusal to follow court orders? There was no authority cited in their brief to say that the judge did not have discretion over the best interests of the child. And there was a flagrant and repeated violation of at least two court orders asking for something simple. So if you logically follow, and it's not a controversy or proposition, that the guardian serves at the pleasure of the court where the guardian is standing at odds and essentially juxtaposing. No, Judge, I'm not going to do what you tell me to do. I'm going to do what I think is best because I'm the guardian. That certainly undermines the credibility of the guardian before the court and rightfully places into question their competence and their suitability, if you go back to the statutory language of 23-2, and giving rise to cause to remove. Are they not acting as is the guardian not acting in that instance as in loco parentis, however? Not when they've been directed by a court to produce the child at the behest of the court's eyes and ears, i.e., the GAL. Moreover, with regards to that particular sequence of events, the plenary guardian had ample time to remediate. The petitions for rule of show clause were in April. What was being asked of her was not her delineating by any stretch of the word. The guardian in line was asking for a simple meeting between my clients to see whether residual bonding or something like that. And didn't the guardian end up saying, however, that in the end, in order to make the recommendation that that meeting was not necessary? Initially. But then when acquired by the court, the court in the record you will call, the court will say, well, there's a missing piece then, isn't there? This was the court sua sponte interrogating the guardian in line. And she agreed that she had been stultified in her investigation. And I also wish to emphasize that order was without prejudice. The reason that you had the delay is because they took an interlocutory appeal right there and then, and then the case wasn't remanded by this court until December of 2016. And we didn't start trial until March of 2018 on the substantive petition. But as reflected in the judgment, the court kept an open mind as to reappointing the appellant and applied those 602 factors, saying the decision before me now in asserting the ward's best interest is do I reappoint Ms. Fountain or do I appoint Corey and Sarah as the successor plenary guardians? So she didn't, she was temporarily removed in order to take away the blockade that she had here to force set up in relation to the court. But again, I think that's an appropriate exercise of the court's discretion given that it's dealing with trying to get at what's in the best interest and being frustrated by its own designate. If there are no further questions, I'm happy to yield the balance if I may. Thank you. Thank you, Your Honor. Mr. Johnson, you may proceed. Thank you. Your Honors, courts don't recognize claims to a fiduciary status. Courts don't recognize, well, because I'm making this claim, all of a sudden I have standing. You either have it or you don't. It's either raining outside or it's not, and you either have standing or you don't. And early on in this case, I understand. I understand what the court's saying about the court order. But you know what? That order should never have been entered in the first place because Corey and Sarah never had standing. So essentially what the order was, let's go take this kid out. Let's have the minor go talk with the guardian and find him. Let's have the guardian invite him to view all this with the petitioners, and the petitioners didn't have any standing at all at that point in time. But the court had standing, or the court had the authority to tell Bouton to produce the child for the guardian. She did not do that. Not for the petitioners, for the guardian, and the guardian was rightfully appointed. I understand. The guardian also said to the court in answer to his question on May 16th, 2016, when the court said, this is what the court is going to do based upon the Ms. Saltzberg. I want to confirm. Do you believe the minor child is in any danger at the present time? Ms. Saltzberg said, no, I do not. And so with him. But that doesn't mean he doesn't want to investigate it. Well, at the end of the day, on May 27th, Ms. Saltzberg said, well, it's kind of a tight call, but yeah, I suppose, you know, take them away. And there was no indication that Ms. Saltzberg had done any vetting of the petitioners to begin with. It's just, it's astonishing as far as a waiver. This Court ruled unwavered. This Court ruled in Scarlett CD what a waiver is. There's no waiver here. Would DCFS, would the Department of Children and Family Services have standing to question whether or not your client should remain guardian? I suppose if there was any reason for it, like in Friends, in the Murray case, and those people weren't trying to change guardians, but they were alerting the court to a very urgent problem. There was no urgent problem here. This child was not in any danger. Well, wasn't Mr. Corey reported by your client to DCFS and they came back after an investigation, determined the claimed sexual abuse was unfounded? Your Honor, the alleged abuse was originally put forth by a mandated reporter, not by my client. Who was the mandated reporter? It was the therapist that my client was bringing the child to. But that gets, the other side just puts that in a fog. And there was also talk about the difference between Scarlett CD and this case. Well, my point is, and I get to certain points tangentially, is in a guardianship it would seem to me that the court has jurisdiction of a ward and is supposed to protect the best interest of the ward. And if someone reports, being a mandated reporter or an unmandated reporter, reports to the court that there's something amiss, it would seem to me that if they don't have standing, they at least have the ability to report, don't they? Yes. So insofar as the, I'm trying to think of their last name. I can't think of it right now. Oh, Krickerberg. They may not have standing to be the petitioners, but they would have standing to at least report to the court and the removal of your client as guardian could be affirmed on the basis that standing is immaterial insofar as whether or not your client was rejected as a guardian. If it were a situation, and again, I respectfully believe that it's a situation that's limited to its facts, that was presented to the court in the Friends case, in those limited situations when there is an emergency situation, urgent situation with the child, perhaps that's true, but it's not true in this case. Your Honors, I ask the court respectfully to reverse this outrage, to direct that the child be placed, returned to my client's care, that my client be reappointed as this child's primary guardian, because I fear, Your Honor, if there's no relief here, no one will step up and become a primary guardian in this state again. Thank you, Your Honors. Thank you. There are no other cases on the call. Court is adjourned.